# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 15 2017, 8:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Williams,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 15, 2017<br><br>Court of Appeals Case No.<br>49A02-1704-CR-842<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Grant Hawkins, Judge<br><br>Trial Court Cause No.<br>49G05-1601-MR-2851<br>49G05-1511-F3-40597 |

**Barnes, Judge.**

# Case Summary

Michael Williams appeals his convictions for felony murder and Level 3 felony robbery. We affirm.

# Issue

Williams raises one issue, which we restate as whether the evidence is sufficient to sustain his convictions.

# Facts

On October 31, 2015, eighteen-year-old Raymond Alvarez and his sixteen-year-old girlfriend, N.B., stopped by Alvarez's parents' apartment in Indianapolis to pick up N.B.'s backpack. N.B. stayed in the car while Alvarez went inside. A vehicle parked next to Alvarez's car, and Kevin Wilkerson got out of the passenger side of the vehicle and approached N.B. Williams was driving that vehicle. Wilkerson asked N.B. for a lighter, which she provided to him. Alvarez then returned, put N.B.'s backpack in the back seat of his vehicle, and started to back out.

Wilkerson made a motion to Alvarez that he needed a lighter again, and Alvarez started to pull back into the spot. Alvarez handed a lighter to Wilkerson, who turned his back to Alvarez and N.B. When Wilkerson turned back around, he had a gun in his hand. Wilkerson told Alvarez to empty his pockets, but Alvarez said he did not have anything. Wilkerson then demanded the backpack. Alvarez reached into the back seat to retrieve the backpack and placed it on his lap. Around this time, Williams said, "don't do no stupid s***,

bro." Tr. Vol. II p. 43. N.B. was not sure if Williams was talking to Wilkerson or Alvarez. Wilkerson grabbed the backpack and threw it onto the passenger seat of Williams's vehicle. N.B. saw the backpack, which was in the car with Williams, moving around, but she could not see Williams's hands. Wilkerson then demanded again that Alvarez empty his pockets. Alvarez said again that he did not have any money but that he did have candy that his brother gave him. Wilkerson said, "You think this s*** is funny, you think this s*** is a game." *Id.* at 47. Wilkerson then shot Alvarez, resulting in his death. Wilkerson jumped into the passenger seat, and Williams drove away quickly.

[5] On November 15, 2015, at approximately 2:00 p.m., Williams entered a Family Dollar store in Lawrence. Williams handed the manager a note demanding cash, and she asked him "if he really wanted to do this." *Id.* at 136. Williams said, "maybe this will make you change your mind," and he showed her something in his pocket that was black and had ridges on it. *Id.* The manager believed it was a gun. The manager and assistant manager then opened the safe and gave the money to Williams. During the incident, a customer approached the counter, and Williams and the other employees told her that the store was closed. The customer, Courtney Delaney, thought the interaction was strange. She left the store, drove across the street to a gas station, and called 911.

[6] Williams left the store and got into the passenger side of a red vehicle driven by Wilkerson. Delaney gave a description of the vehicle to the 911 operator. Officers immediately found the vehicle and attempted to stop the vehicle, but the driver refused to stop. During the pursuit, the vehicle got a flat tire and

stopped. The two men started running away on foot. Officers found two young children hiding in the backseat of the vehicle. During the foot chase of Williams, an officer saw him discard an item and keep running. A black firearm with ridges on the handle was later recovered from that location. When Williams was apprehended, he had the money from Family Dollar and the note he showed to the Family Dollar manager in his possession.

[7] Testing on the firearm revealed that it was the same gun used to kill Alvarez. Williams's DNA was found on the firearm's magazine. Williams admitted to robbing the Family Dollar but denied that he had a weapon during the robbery. Williams also admitted that he was driving when Wilkerson shot Alvarez, but he denied knowing what Wilkerson was doing.

[8] The State charged Williams with murder, felony murder, and Level 2 felony robbery for the incident involving Alvarez and N.B. and alleged that Williams was an habitual offender. Separately, the State charged Williams with Level 3 felony robbery for the Family Dollar incident and again alleged that Williams was an habitual offender. Williams was tried for both cases at a bench trial in January 2017. With respect to the incident involving Alvarez and N.B., the trial court found Williams not guilty of murder but guilty of felony murder and Level 2 felony robbery. With respect to the Family Dollar incident, the trial court found Williams guilty of Level 3 felony robbery. Williams then pled guilty to being an habitual offender.

[9] The trial court sentenced Williams to fifty-five years for felony murder enhanced by twenty years for his status as an habitual offender. The trial court sentenced Williams to twelve years for the Level 3 felony robbery conviction. The trial court did not sentence Williams for the Level 2 felony robbery count associated with Alvarez and N.B. or the second habitual offender allegation due to double jeopardy concerns. The trial court then ordered that the sentences run consecutively for an aggregate sentence of eighty-seven years. Williams now appeals.

## Analysis

[10] Williams challenges the sufficiency of the evidence to sustain his convictions. In reviewing the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015). We only consider "the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* A conviction will be affirmed if there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* "'It is the job of the fact-finder to determine whether the evidence in a particular case sufficiently proves each element of an offense, and we consider conflicting evidence most favorably to the trial court's ruling.'" *Id.* at 1066-67 (quoting *Wright v. State*, 828 N.E.2d 904, 906 (Ind. 2005)).

[11]     Williams first argues that the evidence is insufficient to sustain his conviction for felony murder. Indiana Code Section 35-42-1-1(2) provides that a person who "kills another human being while committing or attempting to commit . . . robbery . . ." commits felony murder. Our supreme court has held that felony murder can be based on accomplice liability. *Wieland v. State*, 736 N.E.2d 1198, 1202-03 (Ind. 2000). Indiana's accomplice liability statute provides that a person "who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense . . . ." Ind. Code § 35-41-2-4. We consider several factors to determine whether a defendant acted as an accomplice, including: "(1) presence at the scene of the crime; (2) companionship with another engaged in a crime; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during, and after the occurrence of the crime." *Wieland*, 736 N.E.2d at 1202.

[12]     According to Williams, the evidence is insufficient to sustain his conviction because "there was no showing that he participated in, or was even aware of, the robbery of Raymond Alvarez . . . ." Appellant's Br. p. 12. Williams contends that N.B. said in a deposition she did not see Williams with the backpack, that he did not participate in the robbery, and that his statement, "Don't do no stupid s***, bro," was directed at Wilkerson. *Id.* at 14.

[13]     The State presented evidence that Williams was driving Wilkerson on the night of Alvarez's death. They parked next to Alvarez's vehicle, and Wilkerson asked N.B. for a light, which she provided. They stayed next to the vehicle until Alvarez arrived, and Wilkerson again asked for a light. When Alvarez

gave him a lighter, Wilkerson pulled a gun and demanded money. Wilkerson took N.B.'s backpack, and Williams said, "don't do no stupid s***, bro." Tr. Vol. II p. 43. N.B. was not sure if Williams was talking to Wilkerson or Alvarez. Wilkerson grabbed the backpack and threw it onto the passenger seat of Williams's vehicle, and N.B. saw the backpack moving but could not see Williams's hands. After Wilkerson shot Alvarez, he jumped into the passenger seat, and Williams drove away quickly.

[14] Williams admits that he was present at the scene. His comments could have been interpreted as directing Alvarez to comply with Wilkerson's demands. N.B. saw the backpack moving, and Williams was the only person in that vehicle. Further, after Wilkerson shot Alvarez, Williams helped him escape the area. The evidence demonstrated that Williams was a participant in the robbery, not a bystander. Williams's argument is merely a request to reweigh the evidence, which we cannot do. We conclude that the evidence is sufficient to sustain his conviction for felony murder.

[15] As for the Level 3 felony robbery conviction associated with the Family Dollar incident, Williams argues that we should reduce his conviction to a Level 5 felony. Indiana Code Section 35-42-5-1 provides that a person "who knowingly or intentionally takes property from another person . . . (1) by using or threatening the use of force on any person; or (2) by putting any person in fear; commits robbery, a Level 5 felony." The offense is a Level 3 felony if it is committed while armed with a deadly weapon. Ind. Code § 35-42-5-1. The State alleged that Williams committed the robbery while armed with a deadly

weapon. Williams does not dispute that he committed the robbery; rather, he argues that the evidence was insufficient to show that he was armed with a deadly weapon at the time.

[16] The State presented evidence that, during the robbery, Williams showed the manager something in his pocket that was black and had ridges on it. The manager believed it was a gun. During the foot pursuit, an officer saw Williams discard something, and a black firearm with ridges on the handle was discovered at that location. Williams's DNA was found on the firearm's magazine. Williams's argument is again merely a request to reweigh the evidence, which we cannot do. The evidence is sufficient to show that Williams was armed with a deadly weapon during the robbery.

## Conclusion

[17] The evidence is sufficient to sustain Williams's convictions for felony murder and Level 3 felony robbery. We affirm.

[18] Affirmed.

May, J., and Bradford, J., concur.